**AMERICAN LEASING CORPORA-TION, Plaintiff,**

v.

**AUTOMATED DISPOSAL SYSTEMS, INC., a corporation, et al., Defendants.**

No. C–C–73–192.

United States District Court, W. D. North Carolina, Charlotte Division.

Oct. 21, 1974.

On Motion for Stay Oct. 24, 1974.

Maurice A. Weinstein and T. LaFontine Odom, Weinstein, Sturges, Odom Bigger & Jonas, Charlotte, N. C., Archibald H. Scales, III, William T. Graham, David V. Liner, Drum & Liner, Winston-Salem, N. C., for defendants.

Thomas R. Eller, Jr., and Richard D. Stephens, Cansler, Lockhart & Eller, Charlotte, N. C., for plaintiff.

David B. Sentelle, Asst. U. S. Atty., Charlotte, N. C., Thomas F. Moore, Jr., Sol., 26th District, and Sidney Eagles, Jr., Asst. Atty. Gen. of N. C., for intervenors.

## ORDER

McMILLAN, District Judge.

This case is before the court upon motion of the North Carolina Attorney General and the North Carolina District Attorney for the Twenty-Sixth District to quash a subpoena requiring a Charlotte city police officer, William B. Austin, Jr., to testify and produce documents in this civil suit.

Neither Mr. Austin nor the State of North Carolina nor the Federal Government nor any of their branches nor any officer nor agent of any agency of government is a party to the case.

The suit was filed on August 13, 1973, by American Leasing Corporation against numerous defendants, including Automated Disposal Systems, Inc. and Henderson Belk of Charlotte. It alleges deceitful or fraudulent acts by a corporation named Temel-Peck Enterprises, Inc. and some other defendants, allegedly taking place "on or about January, 1973," which is now twenty-one months ago.

The defendant Belk denies participation in or knowledge of any fraud, charges it all to Temel and other defendants, and asserts unconditionally that he has never had any conversations, dealings, negotiations or transactions directly or through agents with the plaintiff or with any of the other defendants about the matters alleged in the complaint. If that is true, it would appear that he and his attorneys have at least as much interest as the government attorneys in exposing whoever may have been involved in the fraud, and it would appear in view of the lapse of time that they are at least as likely to uncover the truth about the matter as an "ongoing investigation" which is still apparently fruitless twenty-one months after the events.

The case is now set for trial before a jury in this court during the week of November 11, 1974. This is a part of the jury session of court which began on September 3, 1974.

On May 23, 1973, pursuant to notice duly given and subpoena served, the defendants Automated Disposal Systems, Inc. and Henderson Belk took the deposition of William B. Austin, Jr., a detective in the Charlotte City Police Department.

David Sentelle, *Assistant United States District Attorney*, showed up, accompanying and advising the Charlotte *city* police department witness, Mr. Austin, and advised him not to answer a number of questions. Defendants on July 5, 1974, moved for an order requiring answers to those questions. Austin was also served with a notice to produce certain documents at a continuation of the hearing, scheduled for July 15, 1974. Austin declined to produce the documents, stating that they are records which are "part of criminal investigations now in progress," and that it would hamper these investigations to divulge the information. He also asserted that the city police documents subpoenaed were "under the control of" the Federal Bureau of Investigation and that he was unable to comply with the subpoena.

On July 12, 1974, an objection was filed for the witness Austin by the *City Attorney of the City of Charlotte*, who asserted that the documents are pertinent to "active criminal investigations"; that the subpoena was an "abuse of the subpoena power" and that an order to produce them was an "unreasonable burden" upon Austin and that Austin did not have some of the records. He also entered a general objection to oral examination of the witness.

On September 26, 1974, the witness Austin filed another affidavit, and the *District Solicitor, Thomas F. Moore, Jr.,* and the *Assistant Attorney General of North Carolina,* Lester V. Chalmers, Jr., filed a motion to quash the subpoena and a motion for a protective order, alleging that the materials sought were "work products" of the District Attorney and his staff and of the city police department; that the Detective Austin reports to the District Attorney and that the documents are privileged. They also assert that the defendants don't really want the information to use as evidence in the civil trial, but want it as it may bear upon possible criminal liability of some of the defendants.

On October 7, 1974, a hearing was conducted on the various questions relating to the testimony of Austin and the documents subpoenaed of him. No new evidence was added to the conclusory assertions contained in the affidavits and motions briefly outlined above. At this hearing the witness Austin, who had previously been represented successively by the United States Attorney, by the Charlotte City Attorney, by the Twenty-Sixth District Attorney, and by the Assistant Attorney General of North Carolina, Chalmers, was now represented by Mr. Sidney Eagles, Jr., Assistant Attorney General of North Carolina. No information was given as to what the papers are which are alleged to be the subject of privilege. No authority except public policy was cited to sustain the claim of privilege as to the witness's files on these twenty-one months old events. No reason was advanced why any public interest is served by closing the door on the parties to this civil suit who are seeking through subpoena and deposition to develop facts which the "ongoing investigation" may not yet have disclosed.

There was no evidence that the "ongoing investigation" has made any progress in the last five months or so, and counsel for the witness Austin said it could be completed in six to ten weeks.

The court offered the parties an opportunity to de-fuse the issue by postponing the case for sixty additional days so that state and federal and city authorities might crank up and complete this "ongoing investigation."

Plaintiff's counsel, however (who according to the record have been supplying detailed information to federal and state authorities—including, for example, a 39-page packet of papers entitled "Probable Facts" relating to these transactions), objected to this delay in the trial of this civil action.

From the record it appears that there has been some pretty thorough cooperation by four tiers of law enforcement

people with the lawyers and parties on one side of this case, and a pretty thorough "stone-walling" as far as other parties in the case are concerned.

The public policy which would say that twenty-one months after the events the work product of a police investigator is the private property of him and his department and the federal and state attorneys is not apparent. The public policy in favor of having this information available in a suit which arises out of the very fraud alleged by the District Attorney to be under investigation is obvious.

The court is of the opinion and finds as a fact that the ends of justice require and the Federal Rules of Civil Procedure authorize the court to require that the witness Austin produce the requested information as follows:

With respect to the defendants' motion to compel answers to deposition filed July 5, 1974 (paragraph 4 of the motion), the witness is directed to answer the questions numbered (b), (d), (e), (f) and (g). (Question (a) is moot, and question (c) has been withdrawn.)

The witness is Ordered to produce the following information sought by the subpoena *duces tecum:*

1. Mrs. W. David Temel's handwritten statement to Detective Linda Gail Sloan.

2. The handwritten notes in Mr. Austin's green daily log notebook, pages 17, 18, 19, 20, 21, 33 and 43, pertaining to conversations between Austin and Donald L. Weiss.

3. Letter of July 25, 1974, from the United States Department of Justice Strike Force, Miami, Florida, to the Charlotte Police Department, together with the 11-page statement of David Temel to a member of Strike Force and/or attorney regarding the Disposacon matter.

4. A 39-page packet of documents entitled "Probable Facts Regarding Transactions Between American Leas-

ing Corporation, Automated Disposal Systems, Inc., and Temel-Peck Enterprises, Inc.," given by Mr. Eller or Mr. Stephens (counsel for plaintiff) to Mr. Austin between November 2, 1973, and January 1, 1974. However, counsel for plaintiff is permitted to delete from said packet all statements regarding their opinions or conclusions about this case and they shall not be subject to examination or cross-examination on such opinions or conclusions.

5. A copy of any statement in writing or electronically recorded of W. David Temel, Mrs. W. David Temel, Donald L. Weiss or any employee of American Leasing Corporation received by or in the possession of William B. Austin.

The witness will not be required to produce the memorandum from Attorney Stephens or Attorney Eller to Mr. Austin consisting of nineteen pages plus twelve pages of exhibits interpreting North Carolina General Statutes § 14–100.

The written material will be produced not later than October 25, 1974; and the witness will make himself available at some time convenient to the various parties to complete the answers to the deposition questions not later than October 28, 1974.

If any of the various lawyers who have appeared for Mr. Austin or if Mr. Austin himself desires a protective order concerning the terms under which the material is to be produced and handled, they are directed to submit such a proposed order in writing within five days after the entry of this order; if no such order is submitted, it will be assumed that no such protective order is desired.

### ON MOTION FOR STAY

The 26th District Attorney, on behalf of the Assistant Attorney General of North Carolina, has requested a stay of this court's October 21, 1974 order.

The purpose of the Federal Rules is to expedite litigation instead of delay it, and the purpose of discovery is to reveal rather than to suppress the truth. Neither of these purposes is served by allowing the vague claim of privilege which the various attorneys general and district attorneys have asserted, nor by delaying the trial of this case.

If the motion of the intervening attorneys general were supported by any concrete facts showing probable guilt of a discrete crime *by those seeking discovery*, the court would of course wish to consider such evidence as bearing upon the advisability of postponing the case or delaying discovery.

However, no such factual basis is made to appear; and the vague assertion of right to conceal the unspecified fruits of this ancient "ongoing investigation" is not a basis for postponing a trial which has been on the trial docket for as many weeks as this one.

It was argued by the attorney general that allowing discovery would create a fertile field for one who has committed a crime to arrange a civil suit against himself by the victim so that in such suit he could demand discovery of the fruits of the criminal investigation for the purpose of using such discovery in strategy connected with defense of the criminal prosecution. No instance is advanced in which this strategy has actually occurred and no showing other than the opinion of one of the attorneys general is made that it might be used.

There was a time when, in the courts of North Carolina, virtually any interlocutory order, such as an order on a motion to strike allegations from a pleading, was appealable to the Supreme Court. Numerous unnecessary and expensive delays resulted from such appeals. The General Assembly of North Carolina saw the light and changed the rule. We are (to use a Navy phrase) "standing into" the same danger in federal procedure through the numerous appeals of interlocutory orders and the increasing resort to mandamus and appellate injunction to avoid facing trial on the merits. Unless judges set their faces toward early trials on the merits rather than peripheral delaying skirmishes and time wasting and unsupported claims of privilege by executive officers and others, the courts may bog down in their own rules.

The request for a stay (other than the change of the time for compliance to October 29 instead of October 28, 1974 as agreed among the parties) is denied.